ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| MARK POMERANZ<br><br>Apelante<br><br>v.<br><br>RODOLFO SÁNCHEZ COLBERG<br><br>Apelado | KLAN202400925 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Civil Núm.: FA2024CV00397<br><br>Sobre: Incumplimiento de Contrato, Daños y Perjuicios y otros |

Panel integrado por su presidente el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de diciembre de 2024.

Comparece ante nos el *Sr. Mark Pomeranz* (en adelante; "apelante" o "señor Pomeranz") mediante el recurso de apelación para que revisemos la *Sentencia Parcial* dictada y notificada el 29 de agosto de 2024, por el Tribunal de Primera Instancia, Sala Superior de Fajardo (en adelante; "TPI"). Allí, se declaró *Ha Lugar* una solicitud de desestimación presentada por el co-demandado *Colectivo Group PR, LLC* (en adelante; "Colectivo", "parte apelada" o "co–demandado") y, por consiguiente, desestimó con perjuicio la acción contra Colectivo.

Oportunamente, la parte apelante solicitó reconsideración del dictamen, sin embargo, el TPI mantuvo su determinación el 17 de septiembre de 2024.[1]

Evaluada la totalidad del expediente, **revocamos** la *Sentencia Parcial* apelada. Veamos los fundamentos.

---

[1] Notificada el mismo día.

Número Identificador
SEN2024 _____

**-I-**

De los *autos* ante nuestra consideración surge que, el señor Pomeranz instó una *Demanda* el **5 de mayo de 2024** contra el *Sr. Rodolfo Sánchez Colberg*; la *Sra. Beatriz Marie Capote Ortiz* y la *Sociedad Legal de Gananciales* compuesta por ambos (en adelante; matrimonio Sánchez—Capote); y contra Colectivo.[2] En lo pertinente, en la demanda sometida se presentaron las siguientes alegaciones:

> **5. El 6 de noviembre de 2023, el codemandante, Mark Pomeranz, como comprador y el codemandado, Rodolfo Sánchez Colberg, como vendedor, <u>a través del corredor de bienes raíces Colectivo Group PR LLC,</u>** *<u>suscribieron un contrato de opción de compraventa de la propiedad ubicada en el Condominio Ocean Sixteen, Apartamento 252, Río Grande, Puerto Rico 00745, que se describe en inglés como sigue</u>:*
>
>> *"URBAN: Horizontal Property. Apartment number two hundred fifty-two (252), of irregular shape located on the Fifth (5) floor of Building Two of Ocean Sixteen Condominium, located at Rio Mar Road number nine six eight (968) in the Mameyes Ward of the Municipality of Rio Grande, Puerto Rico.*
>>
>> *This Apartment has an approximate area of one thousand seven hundred and one point eight eight eight (1,701.888) square feet equivalent to one hundred fifty-eight point one one (158.11) square meters. The boundaries are as follows: by the NORTH, in a distance of forty-eight feet and eleven inches (48'11") equivalent to fourteen point nine zero nine eight (14.9098) meters with aerial space of the 60 backyard of Building Two; by the SOUTH, in a distance of forty-eight feet and two inches (48'2") equivalent to fourteen point six eight one two (14.6812) meters with the common wall that separates it from Apartment number two hundred fifty-one (251), the garbage room and corridor one (1) of level five of Building Two, and aerial spaces of the yard and of a planting area of Building Two; by the WEST, in a distance of forty-seven feet and eight inches (47'8") equivalent to fourteen point five two eight eight (14.5288) meters with the common wall that separates it from Apartment number two hundred fifty-one (251), corridor number one (1) of level five of Building Two, and aerial space of the back yard of Building Two; and by the EAST, in a distance of forty-seven feet and eight inches (47'8") equivalent to fourteen point five two eight eight (14.5288 meters with aerial space of the backyard of Building Two, the common wall that separates it from Apartment number two hundred fifty-three (253), and aerial spaces of the yard and of a planting area of Building Two.*
>>
>> *The Entrance door is located on the SOUTH side of the Unit and connects with corridor number one (1) of level five of Building Two.*
>>
>> *The Unit consists of a master bedroom with a balcony, a master bathroom, a walk-in closet and a linen closet, a second bedroom with a bathroom and a walk-in closet,*

---

[2] Anejo 3 de la *Apelación*, págs. 9 – 15.

*a great room, a kitchen, a laundry room, a terrace, a powder room, a foyer and an air conditioner closet.*

*This Apartment has assigned parking spaces number two (2) and one hundred eighty-three (183). It also has an assigned storage room identified as Storage number two hundred fifty-two (252) located in the basement level of Building Two.*

*The percentage share of this Apartment unit in common elements described in the master deed is zero point eight eight seven eight percent (0.8878%).*

*Finca #28,795 de Río Grande. Registro de la Propiedad de Carolina, Sección III.*

*Número de Catastro: 091-039-530-01-027.*

**6.** *Que conforme al contrato de opción de compraventa las partes asumieron las siguientes responsabilidades, entre otras:*

*a. El contrato de opción sería válido hasta el 31 de diciembre de 2023.*
*b. El precio de venta sería de $925,000.*
*c. El comprador pagaría y depositaría la suma de $55,500.00 en efectivo a la firma del contrato.*
*d. La suma de $55,500.00 se acreditaría al precio de venta.*
*e. El remanente de $869,500.00 se pagaría en efectivo al cierre.*
*[…].*

**7.** *El cierre para la compraventa de la propiedad fue pautado para finales del mes de diciembre de 2023.*

**8.** *Así las cosas, el 28 de diciembre de 2023, las partes suscribieron una enmienda al contrato para extender el acuerdo por sesenta (60) días adicionales (hasta el 29 de febrero de 2024) y se añadió una cláusula de arrendamiento "lease provision" de mes a mes. […].*

**9.** *En cuanto al acuerdo de arrendamiento, el comprador se comprometió a pagar la suma de $5,000.00 por concepto de renta y la suma de $500.00 para el pago de las utilidades.*

**10.** *El 29 de febrero de 2024, la parte demandante intentó en reiteradas ocasiones – vía correo electrónico - coordinar con el codemandado, Rodolfo Sánchez Colberg, la celebración del cierre de la transacción de compraventa de la propiedad inmueble, ya que la extensión acordada estaba por finalizar.*

**11.** *La parte demandada le indicó al demandante que estaría comunicándose con éste alrededor del mediodía de ese mismo día 29 de febrero de 2024; no obstante, la parte demandada no llamó al demandante a la hora acordada.*

**12.** *Ante la falta de comunicación por parte del codemandado, la parte demandante cursó un correo electrónico indicándole al codemandado que estuvo a la espera de su llamada durante todo el día; a pesar de ello, la parte demandante le informó a la parte demandada que se encontraba en la disposición de esperar o de trabajar una segunda extensión de término.*

**13.** *En respuesta al correo electrónico cursado por la parte demandante, la parte demandada cursó el 29 de febrero de 2024, a las 4:24 p.m., un correo electrónico donde indicó que había estado todo el día ocupado pero que estaría trabajando una solución para que el cierre se materialice.*

**14.** *En esa misma fecha del 29 de febrero de 2024, habiendo ya culminado el horario comercial y laboral regular del día, las partes tuvieron una conversación telefónica donde acordaron extender le fecha del cierre de la transacción de compraventa*

*hasta el 31 de marzo de 2024 y que el demandante pagaría $5,000.00 adicionales hasta le fecha del 31 de marzo de 2024.*

**15.** *De igual forma, las partes acordaron en su conversación telefónica del 29 de febrero de 2024, que de celebrarse el cierre antes del 31 de marzo de 2024, el pago de $5,000.00 sería prorrateado.*

**16.** *Del cierre celebrarse en la fecha del 31 de marzo de 2024, los demandados solamente tendrían derecho al pago de los $5,000.00 según acordado.*

**17. En ningún momento las partes acordaron que el demandante pagaría penalidades adicionales a los $5,000.00 mensual por extender la fecha del cierre de la compraventa.**

**18.** *El 11 de marzo de 2024, el codemandado, Rodolfo Sánchez Colberg, cursó un correo electrónico al demandante indicando que se encontraba preparado para celebrar el cierre en la fecha del 1 de abril de 2024.*

**19.** *El pago de $5,000.00 adicionales por mes acordado entre las partes sería realizado en la fecha del cierre de la compraventa del bien inmueble descrito en el inciso 5 de la presente reclamación.*

**20.** *Finalmente, y luego de varias gestiones por parte del demandante, los codemandados accedieron al cierre de compraventa de la propiedad para la fecha del 26 de abril de 2024.*

**21. No obstante, un día antes del cierre de la compraventa de la propiedad, los demandados reclamaron en el detalle de los gastos para el cierre una penalidad y/o cargo ascendente a $10,000.00. Dicha partida fue identificada como "extensión fee". Ello, sin existir acuerdo entre las partes sobre dicha penalidad de $10,000.00**.

**22.** *La única partida acordada por las partes fue el pago de $10,000.00 correspondiente a marzo y abril de 2024 y que seria cubierta en la fecha del cierre de compraventa del bien inmueble.*

**23.** <u>No obstante, **los codemandados** unilateralmente reclamaron de forma ilícita y sin acuerdo alguno $10,000.00 adicionales por un supuesto "extensión fee".</u>

**24. <u>Que tanto el vendedor como el corredor de bienes raíces</u>** <u>habían hecho manifestaciones y asegurado que la compraventa de la propiedad se llevaría a cabo.</u>

**25.** <u>Que, **ante la seguridad manifestada por las partes para completar el negocio y la compraventa de la propiedad**, la parte demandante ha invertido aproximadamente en $100,000.00 para poner la propiedad en condiciones habitables que incluyen pero, no se limitan a la remodelación, pintura, compra de mobiliario y equipo electrodoméstico, electricidad para convertirla en un apartamento inteligente ("smart home"), entre otros.</u>

**26.** *Que, como condición para extender el contrato, el vendedor impuso una penalidad de $5,000.00 mensual, más aumentó en igual suma la renta para un total de $10,000.00 adicionales. Esto a pesar, que el comprador ha estado listo para la firma de la escritura.*

**27.** <u>Que todas las sumas acordadas en el **contrato** y su enmienda han sido pagadas por el comprador. El acuerdo de las partes fue que al momento del cierre los vendedores recibirían $10,000.00 por los meses de marzo y abril de 2024.</u>

*28.* *Que los vendedores (demandados) han dilatado intencionalmente el proceso de cierre para beneficiarse económicamente de la parte compradora (demandante).*

*29. La parte demandante en varias instancias ha tenido que detener sus negocios y operaciones comerciales con la expectativa – pero sin éxito - de que se le celebre cierre de la compraventa de la propiedad.*

*30. Que los cierres pautados, no se han llevado a cabo por razones atribuibles exclusivamente **al vendedor y/o a sus representantes**.*

*31. Que la parte demandada cumplió cabalmente con el pago de $55,500.00 de depósito.*

*32. Que los codemandados, Rodolfo Sánchez Colberg, Beatriz Marie Capote Ortiz y la Sociedad de Gananciales compuesta por ambos han alterado los acuerdos alcanzados incluyendo penalidades y cargos de extensión con el único propósito de lucrarse ilegalmente de la parte demandante.*

*33. Que las actuaciones culposas e intencionales de la parte demandada le han provocado daños y angustias mentales a la parte demandante y su familia por la posibilidad de la pérdida de la propiedad valorado en una suma no menor de $100,000.00; más la pérdida del adelanto de $55,500.00; más la pérdida de la renta pagada por el inmueble para la compra de la propiedad ($5,500.00 x 4 = $22,000.00) y la posibilidad de la pérdida de la inversión en la propiedad para acomodarla a su gusto ($100,000.00), para un total combinado de $277,500.00.*

*34. Se trae al proceso a la compañía Colectivo Group PR LLC, por ser el corredor de bienes raíces e intermediario entre las partes y **ser partícipes activos en todo el proceso**.*

*35. Que la parte demandada ha actuado de forma temeraria al no cumplir con los términos del contrato suscrito entre las partes, al querer aprovecharse de la suma pagada en adelanto y la inversión realizada en la propiedad y al querer imponer una penalidad como condición a la extensión del contrato a pesar, que el cierre no se dio por causas atribuibles al demandante y que han requerido que se haya tenido que acudir en auxilio a este Tribunal.* [sic].[3]

Ante tales alegaciones, el señor Pomeranz solicitó, entre otras cosas, que se emitieran varias órdenes referentes al cumplimiento de la Opción de Compra y la escritura de Compraventa del inmueble; se dejara sin efecto toda penalidad, renta, cargo(s) y/o partida líquida incluida a partir del 29 de febrero de 2024; y, se condenara solidariamente al matrimonio Sánchez—Capote y a Colectivo los pagos de las sumas de $100,000.00 por los daños sufridos y $33,000.00 como honorarios por temeridad; además, de concederle la posesión del inmueble hasta tanto se realice la compraventa.

---

[3] *Íd.*, págs. 10 – 14. Énfasis nuestro.

Por su parte, el **5 de agosto de 2024** Colectivo sometió una *"MOCIÓN SOLICITANDO LA DESESTIMACIÓN DE LA DEMANDAN EN CUANTO A COLECTIVO GROUP PR, LLC"*.[4] En esencia, adujo que las alegaciones presentadas, aun cuando fueran examinadas del modo más favorable para la parte apelante, son insuficiente para configurar la acción promovida contra Colectivo. Arguyó, además, que en todo caso sería a un mero testigo y no una parte del pleito.

En cumplimiento,[5] el **26 de agosto de 2024** el señor Pomeranz se opuso a la desestimación mediante *"MOCIÓN EN CUMPLIMIENTO DE ORDEN Y OPOSICIÓN A MOCIÓN SOLICITANDO DESESTIMACIÓN PARCIAL POR FALTA DE CAUSA"*.[6] Entre otras cosas, señaló que existen varias alegaciones contra Colectivo que lo responsabilizan de los daños reclamados. Especificó que, Colectivo fue partícipe del contrato de opción de compraventa, responsable de coordinar todos los asuntos y documentación necesaria, además de recibir la aportación inicial. Añadió que esa parte incumplió con sus obligaciones, se benefició del contrato y no le ha informado sobre el paradero del depósito pagado.

Evaluada la solicitud de desestimación y su oposición, el **29 de agosto de 2024** el TPI emitió una *Sentencia Parcial.*[7] Allí, acogió la solicitud de Colectivo y, consecuentemente, desestimó con perjuicio la acción en su contra. En resumen, indicó que las alegaciones en la demanda contra Colectivo no justificaban la concesión de un remedio contra esta parte.

Inconforme con el dictamen, el **13 de septiembre de 2024**, el señor Pomeranz solicitó la reconsideración del dictamen.[8] Sin

---

[4] Anejo 4 de la *Apelación*, págs. 16 – 25.
[5] Anejo 5 de la *Apelación*, pág. 26.
[6] Anejo 6 de la *Apelación*, págs. 27 – 34.
[7] Notificada el mismo día.; Anejo 1 de la *Apelación*, págs. 1 – 7.
[8] Anejo 9 de la *Apelación*, págs. 42 – 54.

embargo, el TPI declaró *No Ha Lugar* la solicitud el **17 de septiembre de 2024**.[9]

Por lo cual, el señor Pomeranz apeló la *Sentencia Parcial* ante este Tribunal de Apelaciones el **16 de octubre de 2024**. Mediante el recurso de apelación epígrafe señaló la comisión del siguiente error:

> ***ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR CON PERJUICIO LA DEMANDA DE AUTOS CONTRA COLECTIVO GROUP PR, LLC. VIOLENTANDO EL DERECHO CONSTITUCIONAL A UN DEBIDO PROCESO DE LEY.***

El **20 de noviembre de 2024**, *Colectivo Group PR, LLC* compareció ante nos mediante el escrito intitulado: *"ALEGATO EN OPOSICIÓN A RECURSO DE APELACIÓN"*. Por lo cual, el **21 de noviembre de 2024** emitimos una *Resolución*, en la cual, dimos por perfeccionado el asunto para la consideración del Panel.

-II-

-A-

Es conocido que las alegaciones de una demanda tienen como propósito bosquejar o notificar a grandes rasgos cuáles son las reclamaciones y las defensas de las partes. En ese sentido, la Regla 6.1 de Procedimiento Civil dispone que una alegación que exponga una solicitud de remedio debe contener ***"una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio"***.[10]

Cónsono con lo anterior, la Regla 10.2 de Procedimiento Civil establece —además de otras— la defensa de dejar de exponer una reclamación que justifique la concesión de un remedio como fundamento para solicitar la desestimación de una causa de acción.[11] En lo pertinente, la referida Regla dispone, que:

> *Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción*

---

[9] Anejo 2 de la *Apelación*, pág. 8.
[10] Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 6.1. *Énfasis nuestro.*
[11] 32 LPRA Ap. V., R. 10.2.

> *de la parte que alega, las siguientes defensas pueden hacerse*
> *mediante una moción debidamente fundamentada:*
>     *(1) falta de jurisdicción sobre la materia;*
>     *(2) falta de jurisdicción sobre la persona;*
>     *(3) insuficiencia del emplazamiento;*
>     *(4) insuficiencia del diligenciamiento del emplazamiento;*
>     *(5) **dejar de exponer una reclamación que justifique la***
>     ***concesión de un remedio**;*
>     *(6) dejar de acumular una parte indispensable. [...].[12]*

En lo concerniente a nuestra controversia se ha resuelto que, ante la presentación de una moción de desestimación basada en la quinta defensa de dicha Regla, los foros judiciales ***debemos tomar como ciertas todas las alegaciones fácticas plasmadas en la demanda***.[13] En ese sentido, estamos obligados a interpretar las aseveraciones de la parte demandante en forma conjunta, de la manera más favorable y liberal, formulando a su favor todas las inferencias que puedan asistirle.[14] En otras palabras, los tribunales debemos razonar —***si a la luz de la situación más favorable al demandante y resolviendo las dudas a su favor***— la demanda es suficiente para constituir una reclamación válida.[15]

Conforme a lo antes dicho, la causa de acción no debe ser desestimada, a menos que el promovente de la moción demuestre que el demandante no tiene derecho a ***remedio alguno*** al amparo de cualquier estado de hechos que puedan ser evidenciados en apoyo a su causa de acción.[16]

En consecuencia, la desestimación procede cuando existen circunstancias que permiten a los tribunales determinar —sin ambages— que la demanda ***adolece de todo mérito o que la parte no tiene derecho a obtener remedio alguno***.[17] En ese sentido, es apropiado reiterar que nuestro Tribunal Supremo ha sostenido firmemente la clara política pública judicial de que los casos se

---

[12] *Íd. Énfasis nuestro.*
[13] *Colón v. Lotería,* 167 DPR 625, 649 (2006).; *Roldán v. Lutrón, SM, Inc.,* 151 DPR 883, 889 (2000). *Énfasis nuestro.*
[14] *Colón v. Lotería, supra,* a la pág. 649.
[15] *Colón Rivera et al. v. ELA*, 189 DPR 1033 (2013). *Énfasis nuestro.*
[16] *Colón v. Lotería, supra*, pág. 649. *Énfasis nuestro.*
[17] *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013). *Énfasis nuestro.*

ventilen en sus méritos.[18] Como corolario a esa política, se ha recalcado que existe un trascendental interés en que todo litigante tenga su día en corte.[19]

**-B-**

Estamos consciente que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[20]

La citada norma de deferencia también es aplicable a las *decisiones discrecionales* de los tribunales de instancia. En cuanto a este particular, nuestro Alto Foro ha expresado lo siguiente:

> *No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último **(1)** actuó con prejuicio o parcialidad, **(2)** incurrió en un craso abuso de discreción, o **(3)** se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[21]*

Lo importante al momento de ejercer la función revisora es determinar cuándo un tribunal ha abusado de su discreción, ello, no constituye una tarea fácil.[22]

Por lo tanto, para realizarla adecuadamente nuestro Tribunal Supremo nos ha indicado que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad.[23]

**-III-**

En síntesis, la parte apelante nos plantea que el TPI erró al desestimar con perjuicio la acción instada contra la codemandada y aquí apelada, Colectivo. Sostiene que, tanto en la *Demanda* como el contrato original, existen alegaciones suficientes y justificativas para la concesión de un remedio por incumplimiento de Colectivo

---

[18] *Datiz v. Hospital Episcopal*, 163 DPR 10, 20 (2004).
[19] *Íd.*
[20] *Coop. Seguros Múltiples de PR v. Lugo*, 136 DPR 203, 208 (1994).
[21] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[22] *Íd.*
[23] *Íd.*

con varias obligaciones. Aduce que Colectivo incumplió con sus obligaciones como corredor de bienes raíces e intermediario en el proceso de compraventa, además, incumplió con el rol en recibir y retener el depósito de $55,000.00 entregado por la parte apelante.

Por su parte, el TPI determinó que el señor Pomeranz no cumplió con alegar algún hecho específico en la *Demanda* que le imputara o justificara responsabilidad a Colectivo, por lo que, no justificaba que permaneciera como parte en el pleito.

Contrario a la interpretación del TPI, entendemos que hay alegaciones en la demanda que, interpretadas de la forma *más favorable y resolviendo las dudas a favor* de la parte apelante, constituyen una reclamación válida contra Colectivo. Nos explicamos.

Nótese, que en la demanda el señor Pomeranz hace unas alegaciones de negligencia contra la parte apelada, tanto en el incumplimiento del contrato de opción de compra, como en su rol de corredor durante el proceso fallido de la compraventa. Todavía más, la etapa inicial en la que se encuentra este caso requiere que Colectivo conteste la demanda y se inicie el descubrimiento de prueba, y en el proceso, se dilucide la participación de la apelada en este caso. No olvidemos que nuestro marco procesal civil está diseñado para que una parte reclamante tenga la oportunidad de ventilar su caso en los méritos; incluso, enmendar las alegaciones de la demanda prospectivamente.

Por lo cual, en esta etapa inicial de la demanda entablada por el señor Pomeranz resulta forzoso concluir que el TPI se equivocó al desestimar con perjuicio la reclamación contra Colectivo, cuando aún el apelante tiene una reclamación que justifica la concesión de un remedio contra esta parte.

Por lo tanto, corresponde revocar la *Sentencia Parcial* apelada, toda vez que hay alegaciones justificadas y suficientes contra

Colectivo que promueven la continuidad de los procedimientos en su contra.

### -IV-

Cónsono con lo anterior, procedemos a **revocar** la *Sentencia Parcial*, y ordenar la continuación de los procesos conforme a la presente determinación.

**Notifíquese Inmediatamente.**

Lo acordó y manda el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones